DONALDSON, Judge.
Timothy Jackson, d/b/a T & L Unlimited and Ray’s Barbeque (hereinafter sometimes referred to as “the tenant”), appeals from an order of the Etowah Circuit Court (“the circuit court”) granting possession of certain real estate to John T. Davis and Supermart, L.L.C. (“Supermart”) (Davis and Supermart are hereinafter referred to collectively as “the landlords”),, and denying the tenant an injunction against Davis, Supermart, and Austin’s Seafood & Steakhouse, L.L.C. (“Austin’s Seafood”)(the landlords and Austin’s Seafood are hereinafter referred to collectively as “the defendants”). We elect to treat the portion of the appeal challenging the jurisdiction of the circuit court to grant certain relief as a petition for a writ of mandamus, and we deny the petition. We dismiss the appeal as to the remaining issues on the basis that it does not arise from a final, appeal-able judgment.

Factual and Procedural History

The record shows that Jackson and his wife owned and operated Ray’s Barbeque, a restaurant in Gadsden, through a business entity named T & L Unlimited.[1] In January 2012, the building where Ray’s Barbeque had been located for over 40 years was destroyed by a fire. Shortly thereafter, Jackson entered into negotiations with Davis to relocate Ray’s Barbeque to the Petro Travel Center (“the travel center”) in Gadsden, which Davis operated through a business entity named Supermart. Testimony indicates that the travel center is a “modern day truck stop” with various businesses operating on the premises providing services to truck drivers and other travelers. Davis testified that he also operated, through Austin’s Seafood, a restaurant named Austin’s Seafood and Steakhouse in a separate building located across the street from the travel center. In February 2012, Jackson and Davis reached an oral agreement for Ray’s Barbeque to relocate and operate in a vacant shop at the travel center. Testimony indicates that Jackson and Davis agreed that Ray’s Barbeque would be open for business in the mornings to provide a breakfast option for the travel center’s customers, that it would also serve lunch, and that it would be the sole source of hot food served at the travel center during breakfast and lunch hours because neither Austin’s Seafood and Steakhouse nor another business operating in the travel center would serve hot food during breakfast or lunch hours. The terms of the oral agreement, including the duration of the tenancy and the rent amount, were never reduced to writing. Following the discussions between Jackson and Davis and their reaching the oral agreement, Ray’s Barbeque opened at the travel center in early March 2012.
On April 3, 2012, Jackson delivered a rent payment of $2,000 to Davis. The following day, Davis informed Jackson that he was displeased with the arrangement and that Ray’s Barbeque would need to vacate the travel center’s premises. On April 9, 2012, Davis hand-delivered a notice to Jackson that directed Ray’s Barbeque to vacate the travel center because the landlords were terminating what Davis described in the notice as a month-to-month tenancy agreement. In the April 9 notice, Davis cited the failure of Ray’s Barbeque to provide breakfast services, as *823 required by the terms of the oral agreement, as the reason for terminating of the tenancy.
In response to the notice, the tenant filed suit against the defendants in the circuit court on June 1, 2012. In the complaint, the tenant asserted a claim of breach of contract against Supermart, alleging that Supermart, without cause, prematurely terminated what was described as an enforceable five-year lease it had entered into with the tenant. The tenant also stated claims of tortious interference with business relations, conspiracy, and fraud against the defendants arising from the landlords’ alleged early termination of the five-year lease and based on allegations that Austin Seafood and Steakhouse had begun serving food during lunch hours in violation of the agreement between the tenant and the landlords. The tenant demanded a jury trial.
The defendants filed an answer denying all the tenant’s claims. The landlords also filed a counterclaim alleging that Davis had entered into an agreement with the tenant for use of a portion of the travel center operated by Supermart on a month-to-month basis for the sum of $8,500 per month; that the tenant had refused to pay the agreed-upon monthly payment; and that the tenant had negligently or recklessly damaged the property by causing a fire. As a part of the relief demanded in the counterclaim, the landlords sought a judgment against the tenant for immediate possession of the property, for all “unpaid rent” during tenant’s occupancy, and for damage to the property in the amount of $20,000, plus costs.
On August 17, 2012, the tenant moved for a preliminary injunction, seeking to enjoin the defendants from serving and selling any breakfast and hot-lunch items in the travel center and from taking any actions to discourage the customers of the travel center from patronizing Ray’s Barbeque. On August 27, 2012, the circuit court held a hearing and received ore ten-us testimony from Jackson and Davis. The transcript indicates that the hearing was limited to the landlords’ claim for immediate possession of the property and the tenant’s motion for a preliminary injunction. At the commencement of the hearing and again at the conclusion of the hearing, the tenant objected to the landlords’ claim for immediate possession on the ground that the circuit court lacked subject-matter jurisdiction to grant that relief. The tenant claimed that the relief being sought by the landlords was in the nature of the relief available in an unlawful-detainer action and that, because unlawful-detainer actions are within the exclusive jurisdiction of the district courts, the circuit court, therefore, could not grant the relief being requested. The landlords did not dispute the tenant’s characterization of the relief being sought, and the tenant did not raise an objection to the procedures being followed in conducting the hearing.
On August 31, 2012, the circuit court entered an order granting the portion of the landlords’ counterclaim seeking possession of the property and requiring the tenant to vacate the premises within 30 days of the entry of the order. The circuit court also denied the tenant’s motion for a preliminary injunction. In its order, the circuit court made several specific findings of fact, including the following:
“It is without dispute that there is no writing of any type reflecting the terms of any claimed agreement between the parties with respect to the occupancy by [the tenant] of the property of the [landlords]. The sworn testimony of the parties evidences that there was never, in fact, a ‘meeting of the minds’ of the parties. Specifically, the Court deter *824 mines that the amount of rent, the length of any rental term, and other conditions such as requirements for opening and closing and hours of operation were, and are, uncertain or indefinite .... The Court therefore determines that the parties had no contract which is enforceable by this Court. Smith v. Chickamauga Cedar Co., 263 Ala. 245, 82 So.2d 200 (1955); Alexander v. Petroleum Installation Co., Inc., 695 So.2d 30 (Ala.Civ.App.1996).”
At the time the August 31, 2012, order was entered, there were numerous other claims pending between the tenant and defendants. The circuit court, therefore, certified the August 31, 2012, order as final pursuant to Rule 54(b), Ala. R. Civ. P. The tenant filed a motion seeking relief from the order, in which he again asserted that the circuit court lacked subject-matter jurisdiction to consider or to grant relief on the landlords’ claim for immediate possession. The circuit court held a hearing on that motion on September 21, 2012, and the motion was ultimately denied by operation of law. See Rule 59.1, Ala. R. Civ. P. The tenant timely appealed to our supreme court. The supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.

Analysis

On appeal, the tenant contends that the circuit court improperly certified as final, pursuant to Rule 54(b), Ala. R. Civ. P., its August 31, 2012, order granting the landlords’ counterclaim for immediate possession.[2] The tenant argues that the Rule 54(b) certification was improper because the landlords’ counterclaim for immediate possession is “so closely intertwined” with the remaining claims “that separate adjudication would pose an unreasonable risk of inconsistent results.” Branch v. South-Trust Bank of Dothan, N.A., 514 So.2d 1373,1374 (Ala.1987).
After a review of the record, we conclude that none of the claims asserted by the parties in the circuit court has been fully resolved; therefore, the August 31, 2012, order is neither final and appealable nor an appropriate order to be certified as final under Rule 54(b). The order did not adjudicate the tenant’s claims of breach of contract, fraud, tortious interference, and conspiracy. Nor did the circuit court’s order fully adjudicate the landlords’ counterclaims. As discussed in further detail below, the landlords’ counterclaim for immediate possession of the property and for damages for rent due constituted a claim of ejectment. A claim of ejectment is “considered a mixed action for the recovery of land and for damages for the use and occupation of the land.” I Jesse P. Evans III, Alabama Property Rights and Remedies § 20.1[b](5th ed.2012) (footnote omitted). The order partially adjudicated the ejectment claim by awarding the landlords possession of the property; however, the circuit court did not address the landlords’ request for damages for unpaid rent. Although the circuit court certified the August 31, 2012, order as final and appealable pursuant to Rule 54(b), our courts have consistently held that a trial court cannot certify a judgment disposing of only part of a claim as a final judgment under that *825 rule.[3] See Stephens v. Fines Recycling, Inc., 84 So.3d 867, 877 (Ala.2011); Austin v. Austin, 102 So.3d 403, 407 (Ala.Civ.App. 2012); and Martin v. Phillips, 7 So.3d 1012, 1020 (Ala.Civ.App.2008). The August 27, 2012, hearing was not a trial on the merits, and the circuit court considered only the landlords’ claim for possession and the tenant’s request for a preliminary injunction. Although Rule 65(a)(2), Ala. R. Civ. P., authorizes a trial court, “[bjefore or after the commencement of the hearing of an application for a preliminary injunction, ... [to] order the trial of the action on the merits to be advanced and consolidated with the hearing of the application,” there is no indication in the record that that procedure was followed in this case. Because no party has been fully heard on any claims, and because the remaining claims are intertwined with those addressed in the August 31, 2012, order, there is no final judgment for purposes of appellate review. Also, although Rule 4(a)(1)(A), Ala. RApp. P., authorizes a party to appeal an interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction, the tenant has not challenged the August 31, 2012 order insofar as it denies the tenant’s request for a preliminary injunction.
The tenant next contends that the circuit court denied the right to a jury trial and usurped the role of the jury by making findings of fact in its August 31, 2012, order and that the circuit court should have permitted those factual issues to be decided by a jury. Because no final judgment has been entered and because the tenant has not challenged the denial of the request for a preliminary injunction, this issue is not properly before this court. We note, however, that, under Rule 52(a), Ala. R. Civ. P., a court considering a request for a preliminary injunction is permitted to make findings of fact and conclusions of law.[4] Additionally, because the August 31, 2012, order is interlocutory, it is “subject to modification at any time before entry of the final judgment.” Uphaus v. Charter Hosp. of Mobile, 582 So.2d 1140, 1142 (Ala.Civ.App.1991). Thus, as the circuit court noted in the hearing on the tenant’s motion seeking relief from the order, the circuit court’s August 31, 2012, order does not preclude the tenant’s right to a jury trial on the breach-of-contract, fraud, tortious-interference, and conspiracy claims. See Rule 65(a)(2), Ala. R. Civ. P.
The tenant has also asserted on appeal that the circuit court did not have subject-matter jurisdiction to consider and to grant the landlords’ request for possession. The tenant contends that the portion of the counterclaim seeking possession of the property is in the nature of an unlawful-detainer action and that the circuit court lacked subject-matter jurisdiction to consider that claim. Although we have determined that the circuit court’s August 31, 2012, order resolving only a portion of this counterclaim is not final and appeal-able, we note that the question of subject-matter jurisdiction may be reviewed by a petition for a writ of mandamus. See Ex *826 parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003); see also Ex parte Johnson, 715 So.2d 788, 785 (Ala.1998), and Ex parte Alfa Mut. Gen. Ins. Co., 684 So.2d 1281 (Ala.1996). Accordingly, we elect to treat that aspect of the appeal challenging whether the circuit court had jurisdiction to grant that portion of the counterclaim seeking immediate possession as a petition for a writ of mandamus because the tenant is challenging the circuit court’s subject-matter jurisdiction. See Ex parte Bailey, 814 So.2d 867, 869 (Ala.2001) (quoting Ex parte Cincinnati Ins. Co., 689 So.2d 47, 49 (Ala.1997)); McConico v. Correctional Med. Servs., Inc., 41 So.3d 8, 11 (Ala.Civ.App.2009) (treating a portion of an appeal as a petition for the writ of mandamus when proper review of the relevant issue was by petition for the writ of mandamus).
Our standard of review on a petition for the writ of mandamus is well settled:
“Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995).
“Unlawful detainer” is defined in § 6-6-310(2), Ala.Code 1975, as “[wjhere one who has lawfully entered into possession of lands as tenant fails or refuses, after the termination of the possessory interest of the tenant, to deliver possession of the premises to anyone lawfully entitled or his or her agent or attorney.” An unlawful-detainer cause of action is purely statutory. ' McDevitt v. Lambert, 80 Ala.536, 540, 2 So, 438, 440 (1887).
“By statute, original jurisdiction over unlawful-detainer actions lies in the district courts. § 6-6-330, Ala.Code 1975 (‘The forcible entry upon and detainer, or the unlawful detainer, of lands, tenements and hereditaments is cognizable before the district court of the county in which the offense is committed.’). A circuit court may not exercise jurisdiction over an unlawful-detainer action until the district court has adjudicated the unlawful-detainer action and one of the parties has appealed to the circuit court. See § 6-6-350, Ala.Code 1975 (‘Any party may appeal from a judgment entered against him or her [in an unlawful-de-tainer action] by a district court to the circuit court at any time within seven days after the entry thereof, and [the] appeal and the proceedings thereon shall in all respects, except as provided in this article, be governed by this code relating to appeal from district courts.’).”
Darby v. Schley, 8 So.3d 1011, 1013 (Ala.Civ.App.2008). Throughout the proceedings in the circuit court, the landlords never challenged the tenant’s characterization of the counterclaim as being in the nature of an unlawful-detainer action. Instead, the landlords argued that the circuit court had jurisdiction to consider the counterclaim and to grant the relief sought due to the compulsory nature of the claim. Stated otherwise, the landlords claimed that their counterclaim arose “out of the transaction or occurrence that is the subject matter of the [tenant’s] claim, and as such, it was required to be litigated in the same case under Rule 13(a), A[la], R. Civ. P.” On appeal, however, the landlords contend that the counterclaim was in the nature of an ejectment action arising under § 6-6-280(b), Ala.Code 1975, a cause of action that is cognizable in the circuit court. Ejectment actions were recognized at common law, but they also may be filed pursu *827 ant to the statutory provisions of § 6-6-280(b), Ala.Code 1975. The circuit courts have subject-matter jurisdiction over ejectment actions. See Jetton v. Lindsey, 529 So.2d 1018, 1019 (Ala.Civ.App.1988) (concluding that an action for ejectment is not required to be filed in the district court and that the action was properly before the circuit court).
In Ex parte McKinney, 87 So.3d 502 (Ala.2011), our supreme court restated the distinction between a cause of action for ejectment and one alleging unlawful de-tainer, stating: “ ‘Ejectment may be maintained on proof of title carrying, as an element of ownership, a right to possession and enjoyment. Unlawful detainer is a penal action, summary in character, specifically designed to oust a hold-over tenant.’ ” 87 So.3d at 507 n. 6 (quoting Lane v. Henderson, 232 Ala. 122, 124, 167 So. 270, 271 (1936)). This court has further stated that
“[ujnlawful detainer concerns only the right of possession of property and usually does not involve any question of title in the land. Mitchell v. Rogers, 370 So.2d 263 (Ala.1979).... Plaintiff, in order to recover in an ejectment action, must prove his legal title to the property. Coffee v. [Keeton ], 248 Ala. 19, 26 So.2d 80 (1946); Henry v. Brannan, 149 Ala. 323, 42 So. 995 (1906); Jackson Lumber Co. v. McCreary, 137 Ala. 278, 34 So. 850 (1903) (ejectment is a favored method of trying titles to land).”
Holcomb v. Morris, 457 So.2d 973, 976 (Ala.Civ.App.1984); see also Lee v. Jefferson, 435 So.2d 1240, 1242 (Ala.1983) (“In Alabama, ejectment is a favored action for the trial of title to land.”). “[Sjuperior title often determines the legal right to possession and, thus, title is often litigated in ejectment actions.” I Evans, Alabama Property Rights and Remedies § 20.1 [a] (footnote omitted). However, title to the property is not always an issue in an ejectment action. Id.
In the present case, the parties’ dispute does not pertain to the title to the land. Rather, the landlords’ counterclaim specifically asserts that Supermart “entered into an agreement with the [tenant] for use of a portion of [the travel center] on a month-to-month basis for the sum of $3,500.00 per month.” The landlords further alleged in the counterclaim that the tenant failed to pay “rent” pursuant to the agreement. The testimony of both Davis and Jackson indicates that the tenant began occupying the space pursuant to a leasehold-type arrangement, regardless of whether the oral lease agreement was enforceable.
We agree with the tenant that the circuit court has no jurisdiction over unlawful-detainer actions. Darby, 8 So.3d at 1013. Further, we reject the argument that the circuit court may acquire jurisdiction over an unlawful-detainer action filed as a compulsory counterclaim. In the federal court system, the trial court may hear compulsory counterclaims that it would otherwise lack an independent jurisdictional basis to hear pursuant to the doctrines of “ancillary” or “pendent” jurisdiction, now codified in 28 U.S.C. § 1367 as “supplemental” jurisdiction. See Lloyd Noland Found., Inc. v. HealthSouth Corp., 979 So.2d 784, 794 (Ala.2007) (noting that the doctrines were developed “to avoid piecemeal litigation”); see also 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1414, p. 119 (2010) (stating that the doctrine of supplemental jurisdiction “pro-motets] judicial economy by allowing the adjudication of related claims in a single action”). But the doctrines of ancillary, pendent, or supplemental jurisdiction do not apply in our state courts, and a circuit court has no authority to exercise jurisdic- ■ tion over a statutorily created claim exclu *828 sively cognizable in the district court solely because it was filed as a compulsory counterclaim.
We conclude, however, that relief sought by the landlords was not in the nature of the relief available in an unlawful-detainer action. “The remedies of unlawful detainer and forcible entry are not so exclusive as to preclude the use of other common law or statutory forms of action.” I Evans, Alabama Property Rights and Remedies § 21.2[a]. The cause of action for unlawful detainer is contained within a framework of statutes enacted to address both forcible-entry and unlawful-detainer actions. § 6-6-310 et seq., Ala.Code 1975. The statutes provide for a limited, expedited procedure to obtain an order to remove a holdover tenant without resort to self-help remedies. 35A Am.Jur.2d Forcible Entry and Detainer § 2 (2010) (“Legislatures enacted forcible entry and detainer statutes at least in part to prevent violence and breaches of the peace that result from the use of self-help through force to settle a dispute over possession of real property.” (footnote omitted)). Under these statutes, for example, the time for a response from the defendant is drastically reduced from the time permitted in other civil actions (§ 6-6-332), a continuance of the trial cannot exceed 15 days (§ 6-6-335), the scope of inquiry cannot include challenges to title (§ 6-6-336), and a writ of possession must accompany a judgment in favor of the petitioner (§ 6-6-337). Actions commenced pursuant to these statutes are within the original, exclusive jurisdiction of the district courts. But prosecuting an unlawful-detainer action, with these expedited procedures, is not the exclusive means by which a lessor may obtain a judgment addressing the right to possession of property. The establishment of the unlawful-detainer cause of action, with its expedited process, did not deprive our circuit courts, which are courts of general jurisdiction with equity powers, of the power to enter an order requiring a tenant to vacate premises and entering a writ of possession, so long as, when doing so, the circuit court does not utilize the expedited procedures of an unlawful-detainer action. See Harris v. Hill, 190 Ala. 589, 67 So. 284 (1914)(holding that an ejectment action may be utilized by landlord in lieu of the summary proceedings of an unlawful-de-tainer action); see also 35A Am Jur.2d Forcible Entry and Detainer § 9 (“While there is contrary authority, it is generally held that the statutory proceeding of forcible entry and detainer is not the exclusive remedy available for the repossession of real property but is cumulative of any other remedy the aggrieved party may have.” (footnotes omitted)).
In the present case, the landlords’ counterclaim sought possession of the property they had leased to the tenant, but it did not invoke the unlawful-detainer procedures set out in § 6-6-330 et seq. Even though the dispute did not require a determination of title, the relief sought by the landlords and granted by the circuit court was in the nature of the relief available in an ejectment action, a cause of action within the jurisdiction of the circuit court. The tenant does not contend that the circuit court lacked jurisdiction on the basis that title to the property was not presented as a disputed issue. Instead, the tenant appears to argue that the district court has exclusive jurisdiction over any claim for possession of property when the occupier of the property has entered into possession under a lease arrangement. But an unlawful-detainer action is only one means by which possession of property may be restored following a tenant’s entry pursuant to a lease arrangement. Ejectment is another. “In order to bring [an] action of unlawful detainer ..., the defendant and *829 the plaintiff must be parties to a landlord and tenant relationship, or the defendant must have entered with force or detained possession with force. Ejectment would clearly lie in those circumstances.” I Evans, Alabama Property Rights and Remedies § 21.2[d](emphasis added).
As stated above, a writ of mandamus is an extraordinary remedy, to be issued only when there exists (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court. We make no determination as to whether there were pleading or procedural deficiencies in the landlords’ ejectment counterclaim. The issue before us is simply whether the tenant has established a clear right to mandamus relief on the issue of the subject-matter jurisdiction of the circuit court to enter the order regarding possession of the property. The tenant has not, and we, therefore, deny mandamus relief on this issue. Our denial of mandamus relief is not an affirmance of the circuit court’s order, because our inquiry is limited only to whether the circuit court had subject-matter jurisdiction to enter the order.
The tenant filed a motion on appeal to strike portions of the defendants’ brief containing facts that are not in the record and to strike attachments to the defendants’ brief on appeal that are not a part of the circuit court record.
“As we have stated on many prior occasions, ‘[a]n appellate court is confined in its review to the appellate record, that record cannot be “changed, altered, or varied on appeal by statements in briefs of counsel,” and the court may not “assume error or presume the existence of facts as to which the record is silent.” ’ Beverly v. Beverly, 28 So.3d 1, 4 (Ala.Civ.App.2009) (quoting Quick v. Burton, 960 So.2d 678, 680-81 (Ala.Civ.App. 2006)).”
Dreading v. Dreading, 84 So.3d 935, 937 (Ala.Civ.App.2011). Further, ““‘[attachments to briefs are not considered part of the record and therefore cannot be considered on appeal.”’” Roberts v. NASCO Equip. Co., 986 So.2d 379, 385 (Ala.2007) (quoting Morrow v. State, 928 So.2d 315, 320 n. 5 (Ala.Crim.App.2004), quoting in turn Huff v. State, 596 So.2d 16, 19 (Ala.Crim.App.1991)). Accordingly, the tenant’s motion to strike is granted, and neither the attachments nor any references to the additional facts not included in the record have been considered in the disposition of this matter.
APPEAL DISMISSED; PETITION FOR WRIT OF MANDAMUS DENIED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.

. Although there is an indication that "T & L Unlimited” was formally organized as a limited liability company at some point, the record indicates that it was not an organized business entity at the time relevant to these proceedings.

. Rule 54(b) provides, in part:
"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.”

. The landlords' counterclaim seeking compensation for damage to the property also remains pending in the circuit court.

. That rule states, in part:
"In all actions tried upon the facts without a jury or with an advisory jury, the court may upon written request and shall when required by statute, find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58[, Ala. R. Civ. P.]; and in granting or refusing interlocutory injunctions the court may similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action."
Rule 52(a), Ala. R. Civ. P. (emphasis added).